# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 12, 2013 Session

## STATE OF TENNESSEE v. MARLON SONTAY

**Appeal from the Criminal Court for Davidson County**
**No. 2010-A-518    Seth Norman, Judge**

---

**No.  M2012-01579-CCA-R3-CD - Filed July 31, 2013**

---

Appellant, Marlon E. Sontay, was indicted by the Davidson County Grand Jury for four counts of rape of a child, two counts of aggravated sexual battery, and one count of rape. Appellant was convicted by a jury of all counts.  Appellant was sentenced to twenty five years for each count of rape of a child, eight years for each count of aggravated sexual battery, and eight years for rape.  The trial court ordered Count Two for rape of a child to run consecutively to Count One for rape of a child.  The remaining counts were ordered to run concurrently to each other, for a total effective sentence of 50 years at 100%.  Appellant filed a timely motion for a new trial, which was denied by the trial court.  Appellant raises the following issues for our review: (1) whether the trial court erred in denying the motion to suppress; (2) whether the trial court improperly admitted hearsay testimony of statements made by the victim during the testimony of the nurse practitioner who performed the victim's medical examination; (3) whether the evidence was sufficient to support the convictions; (4) whether the trial court improperly sentenced Appellant; and (5) whether the trial court erred in declining to find Tennessee Code Annotated sections 39-13-504, 39-13-522, and 39-13-523 unconstitutional.  After a review of the record and applicable authorities, we hold that: (1) the trial court did not abuse its discretion in denying the motion to suppress where Appellant voluntarily confessed to detectives; (2) Appellant has waived any issue with regard to the admission of hearsay testimony by failing to object to the testimony at trial and raise the issue in a motion for new trial; (3) the evidence is sufficient to support the convictions for rape of a child, aggravated sexual battery, and rape; (4) the trial court did not abuse its discretion in sentencing Appellant within the range of punishment for his convictions; and (5) the trial court did not err in refusing to find Tennessee Code Annotated sections 39-13-504, 39-13-522, and 39-13-523 unconstitutional.  Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Kathleen G. Morris, Nashville, Tennessee, for the appellant, Marlon Sontay.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General, and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual Background*

Appellant was arrested after his niece, O.S.,[1] informed her parents that her uncle had been sexually abusive towards her. The abuse occurred while the victim was twelve and thirteen years of age. After an investigation, Detective Jill Weaver of the Metropolitan Nashville Police Department obtained an arrest warrant for Appellant. Appellant was arrested and transported to a local hospital for mandatory HIV testing as a result of the pending charges for rape of a child.

When Appellant was taken to the Criminal Justice Center, he was interviewed by Detective Weaver and a Spanish-speaking officer. After he was read his *Miranda* rights, Appellant admitted to the sexual abuse.

Appellant was indicted by the Davidson County Grand Jury in January of 2010 for four counts of rape of a child, two counts of aggravated sexual battery and one count of rape. Prior to trial, Appellant sought to suppress his statements to police. At the hearing on the motion to suppress, Detective Weaver testified that Appellant's confession was voluntary. Appellant testified that he admitted he sexually abused the victim. Further, he admitted that his admission did not come as a result of questioning by the detective. Appellant testified that his statements admitting the sexual abuse before and during the formal interview were consistent with each other. The trial court denied the motion to suppress.

At trial, the victim, then fourteen years of age and in the eighth grade, took the stand. She explained that during the summer between fifth and sixth grade, when she was twelve, she lived with her parents, siblings, aunt, uncle, and Appellant at her home in Nashville.

---

[1] It is the policy of this Court to identify minor victims of sexual abuse by their initials.

The victim explained that the first incidence of abuse took place when her mother was in Houston. Appellant had been drinking and came into the victim's bedroom, touched her breasts and leg, and tried to lay down with her on her bed. The victim told Appellant to leave. He complied.

A few days later, Appellant, the victim, and the victim's younger sister were at home alone. Appellant took the victim to her bedroom where he undressed her, got on top of her, and put his penis inside her vagina. The victim asked him why he was having sex with her, and he responded that "he couldn't do it with anybody else."

The next incident occurred one day early in the school year when the victim was home sick from school. Appellant again took her to her bedroom and put his penis inside her vagina. She asked him to stop. He refused.

On yet another occasion, the victim was asleep in her room. She awoke to find Appellant in her room. He tried to put his penis in her "behind." He managed to get his penis in "a little bit."

Shortly before the victim's thirteenth birthday, Appellant woke the victim up in the middle of the night. He kissed her vagina and spit on it to make his penis go in easier.

There was one occasion during which Appellant asked the victim to come to his room to play video games on his computer. Once the victim was in his room, Appellant put his penis inside her vagina.

The abuse stopped after the victim's parents came home one day to find Appellant in the victim's bathroom. His clothing was on the floor of the victim's bedroom. The victim's father, E.S. threw Appellant out of the house and contacted police.

E.S. testified at trial that he was the father of the victim. Appellant is his younger brother and came from Guatemala to live with them when the victim was a young child. Appellant and his family had a great relationship and Appellant was looked at as part of the family. E.S. recalled the day that he caught Appellant in the victim's bathroom wearing only underwear. He immediately confronted Appellant and gave him one hour to pack his belongings and leave the house.

The victim would only speak with her mother, A.T., about the abuse. The two rode around in the car while the victim recounted the abuse that had started while A.T. was in Houston and continued for at least three months.

Sometime in the next few days, Appellant sent a text message to E.S. apologizing. The message also stated that no one should say anything to prevent the victim from looking bad.

The victim was taken to Our Kids for a medical examination in conjunction with the investigation. At trial, Nurse Practitioner Hollye Gallion testified. She was qualified as an expert in forensic medical examinations of children. She treated the victim on December 11, 2009, about one week after the last incident of abuse. The victim reported that Appellant would "put his body on [her] and he would put his slushy stuff on the paper and throw it away and then come back and do it to [her] again." The victim reported to Ms. Gallion that Appellant touched her breasts, vagina, and anal area. The physical examination showed no evidence of sexual abuse. Ms. Gallion did not expect the examination to show any evidence of sexual abuse due to the timing of the examination.

During the investigation, Detective Jill Weaver set up a controlled telephone call from A.T, the victim's mother, to Appellant. During the telephone call, Appellant admitted that he sexually had abused the victim.

Following his arrest, Appellant was interviewed. Appellant waived his *Miranda* rights and admitted that he had sexually abused the victim. Appellant corroborated much of the victim's allegations. He "described having sexual intercourse with her. . . three to four times." Appellant also "admitted to having anal sex with [the victim] from behind." Appellant also admitted that he did not want to get the victim pregnant so he would "pull out and ejaculate on an article of clothing or some tissue." Appellant described with specificity when the abuse occurred, "normally happening when her parents were gone and, specifically, that first time when her mom was in Texas." Appellant also stated that he was "fully aware of how old [the victim] was" and "basically described it as she was flirting with him, and that she was acting like she was into wanting to have sex with him." Appellant also admitted that he had just finished having sex with the victim when he was caught by her parents and was in the bathroom to "finish wiping off."

Appellant's sister, Maria Sontay, testified that she caught Appellant and the victim's mother, A.T., in a hotel room about to kiss. She claimed to have no knowledge of the abuse and referred to it as a "family problem."

Appellant testified that he was "madly in love" with the victim's mother, A.T., and claimed that the two had an affair. According to Appellant, A.T. asked him to move out but Appellant refused. A.T. only successfully got Appellant to move out by falsely accusing him of sexually abusing the victim. Appellant stated that he lied to Detective Weaver because

she coerced him into confessing. Further, Appellant claimed that he lied during the controlled telephone call because he loved A.T. and was trying to hide their relationship.

At the conclusion of the proof, the jury convicted Appellant of four counts of rape of a child, two counts of aggravated sexual battery, and one count of rape. The trial court held a separate sentencing hearing. At the hearing, Appellant was sentenced to twenty-five years for each conviction for rape of a child, and eight years for each remaining conviction. The trial court ordered two of the convictions for rape of a child to run consecutively to each other but concurrently to the remaining convictions, for a total effective sentence of fifty years at 100%.

Appellant filed a timely motion for new trial. After a hearing, the trial court denied the motion. Appellant appeals, challenging: (1) the denial of the motion to suppress; (2) the admission of hearsay testimony; (3) sufficiency of the evidence; (4) his sentence; and (5) the constitutionality of Tennessee Code Annotated sections 39-13-504, 39-13-522, and 39-13-523.

*Denial of Motion to Suppress*

Initially, Appellant complains that the trial court improperly denied his motion to suppress. Specifically, Appellant claims that Detective Weaver elicited a pre-*Miranda* confession from Appellant in exchange for "help" and that, as a result, both this statement and Appellant's post-*Miranda* confession are inadmissible. The State, on the other hand, argues that the trial court accredited the testimony of Detective Weaver, which showed that Appellant confessed only after he was given his *Miranda* warnings. Therefore, the State insists, the "legality of his voluntary confession . . . does not implicate Fifth Amendment concerns."

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S .W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on

evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). Further, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

The Fifth Amendment to the United States Constitution provides in pertinent part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. However, an accused may waive this right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436 (1966). The Supreme Court held that a suspect may knowingly and intelligently waive the right against self-incrimination only after being apprised of these rights. *Id.* 384 U.S. at 479. Accordingly, for a waiver of the right against self-incrimination to be constitutionally valid, the accused must make an intelligent, knowing, and voluntary waiver of the rights afforded by *Miranda*. *Id.* at 444. In considering the totality of the circumstances a court should consider:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

*State v. Huddleston*, 924 S.W.2d 666, 671 (Tenn. 1996) (quoting *People v. Cipriano*, 429 N.W.2d 781 (Mich. 1988)). However, no single factor is necessarily determinative. *State v. Blackstock*, 19 S.W.3d 200, 208 (Tenn. 2000) (citing *Fairchild v. Lockhart*, 744 F.Supp. 1429, 1453 (E.D. Ark. 1989)). Further, "[a] trial court's determination that a confession was given knowingly and voluntarily is binding on the appellate courts unless the defendant can show that the evidence preponderates against the trial court's ruling." *State v. Keen*, 926 S.W.2d 727, 741 (Tenn. 1994).

A court may conclude that a defendant voluntarily waived his rights if, under the totality of the circumstances, the court determines that the waiver was uncoerced and that the defendant understood the consequences of waiver. *State v. Stephenson*, 878 S.W.2d 530, 545 (Tenn. 1994). In order to be considered voluntary, the statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *State v. Kelly*, 603 S.W.2d 726, 727 (Tenn. 1980)(quoting *Bram v. United States*, 168 U.S. 532, 542-43, 18 S. Ct. 183, 42 L. Ed. 568 (1897)). However, "[a] defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996). Instead, "'coercive police activity is a necessary predicate to finding that a confession is not voluntary . . . .'" *Id.* (quoting *State v. Brimmer*, 876 S.W.2d 75, 79 (Tenn. 1994)).

At the hearing on the motion to suppress, the trial court determined that Appellant understood his *Miranda* warnings and that Appellant made one confession to Detective Weaver. The trial court summarized the facts as follows:

> [After arrest Appellant] was escorted from the booking area. . . to an interview room for purposes of obtaining a statement in the matter. [Appellant] contends that during this walk, Detective Jill Weaver questioned him about the allegations and he made inculpatory statements in response.
>
>     . . . .
>
> Detective Weaver denies having discussed the substance of the investigation with [Appellant]. She maintains that the only thing she asked of [Appellant] was if he had been treated alright since being taken into custody and whether he wished to have an interpreter assist in the matter. Detective Weaver stated that she informed him of the nature of the charges alleged in the warrant but nothing else was ever discussed. She testified that his English was limited but she believed that he was able to understand most of what was going on.
>
>     . . . .
>
> [T]he testimony of [Appellant] with regard to the conversation between he and Detective Weaver is at variance. . . . [T]aking into account the fact that [Appellant's] knowledge of the English language is limited, his contention that he and Detective Weaver maintained an in-depth conversation in which he made inculpatory statements and was promised leniency in return for a subsequent recorded statement is difficult to believe.

Although it seems as though Detective Weaver initiated conversation with [Appellant], her testimony is more consistent and detailed. . . . From an objective examination of the testimony . . . , the Court is of the opinion that the issue of credibility should be resolved in favor of Detective Weaver. As a result, [Appellant's] statement was evidently taken pursuant to a legally perfected *Miranda* waiver and is thus admissible.

As a result of the trial court's assessment of the facts, the court determined that even if Appellant made statements to Detective Weaver prior to the administration of *Miranda* warnings, those statements were spontaneous and voluntary and, therefore, admissible.

The record supports the findings of the trial court. The officer testified that Appellant was confronted with the allegations against him only after he was read his *Miranda* rights. At that time, Appellant admitted that he sexually abused the victim. Although Appellant testified that he confessed to Detective Weaver both prior to and after he was read his rights, the trial court accredited the testimony of Detective Weaver, a task entrusted to the trial court as the finder of fact. Appellant has not shown that the evidence preponderates against the findings of the trial court that he understood his *Miranda* rights and chose to confess to the abuse. Moreover, even if Appellant had confessed to the crimes prior to the delivery of his *Miranda* rights, a voluntary confession would be admissible. *See State v. Walton*, 41 S.W.3d 75, 82 (Tenn. 2001); *State v. Callahan*, 979 S.W.2d 577, 582 (Tenn. 1998). Appellant is not entitled to relief on this issue.

*Admission of Hearsay Testimony*

Next, Appellant argues that his right to confront witnesses was violated because the trial court allowed hearsay statements made by the victim during her forensic exam to be admitted at trial. Specifically, Appellant contends that the statements made by the victim to Ms. Gallion during her exam at Our Kids were inappropriately admitted during the testimony by Ms. Gallion. Additionally, Appellant complains about statements made by the victim during a forensic interview to an unnamed party that were referred to during the testimony of Detective Weaver. Appellant admits that there was no objection to the testimony at trial but urges this Court to find plain error. The State, on the other hand, states that Appellant waived the issue for failing to object at trial and failing to raise the issue in the motion for new trial.

Our supreme court has mandated that when "a party does not object to the admissibility of evidence, . . . the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural

probative effects as if it were in law admissible.'" *State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000) (quoting *State v. Harrington*, 627 S.W.2d 345, 348 (Tenn. 1981)). Accordingly, we find no error was committed, and any consideration of whether the hearsay statements of the victim submitted at trial could have been inadmissible hearsay is waived for failure to object to the testimony at trial or raise the issue before the trial court at a motion for new trial. *See* Tenn. R. App. P. 36(a).

In addition, we briefly note that the issue presented by Appellant fails to meet the requirements necessary for a finding of plain error. Our supreme court has upheld the long established rule that "plain error review places on the defendant the burden of persuasion," and that "[t]he substantive standards for plain error review are difficult to satisfy." *State v. Gomez*, 163 S.W.3d 632, 646 (Tenn. 2005). An appellate court can reverse for plain error only if:

> (a) the record . . . clearly establish[es] what occurred in the trial court; (b) a clear and unequivocal rule of law [has] been breached; (c) a substantial right of the accused [has] been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice.

*Smith*, 24 S.W.3d at 282 (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Furthermore, all five factors must be established, and this Court need not address all five factors if any one factor indicates that relief is not warranted. *Smith*, 24 S.W.3d at 283.

Even if we were to find the admission of the complained of statements was error, the overwhelming proof of guilt presented in this case would have rendered any error harmless and therefore, our consideration of this issue would not be necessary to do substantial justice. Appellant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Next, Appellant claims that the trial court erred in denying his motion for judgment of acquittal and that the evidence was insufficient to support the convictions. Specifically, Appellant points to the victim's "vague and inconsistent" testimony, arguing that there was not proof to support rape, rape of a child, or aggravated sexual battery because the age of the victim at the time of the offenses was not proven; the proof did not show that Appellant penetrated the victim's anal opening; the proof did not show that appellant performed cunnilingus on ths victim; "[k]issing [the victim's groin area] is not rape"; and the proof did

not show that the touching of the victim was "for the purpose of sexual arousal or gratification." The State disagrees.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.*

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *See Tuggle*, 639 S.W.2d at 914.

A motion for judgment of acquittal requires that the trial court determine the sufficiency of the evidence. Tenn. R. Crim. P. 29(a). The standard of review is, therefore,

the same as that utilized when analyzing the sufficiency of the evidence. *State v. Blanton*, 926 S.W.2d 953, 957-58 (Tenn. Crim. App. 1996). The law of this state is that a defendant waives any error by a trial court in denying a motion for a judgment of acquittal at the conclusion of the State's proof if the defendant goes on to introduce evidence following the denial of his motion. *Finch v. State*, 226 S.W.3d 307, 316-18 (Tenn. 2007); *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn. 1979). At the conclusion of the State's proof, Appellant made a motion for judgment of acquittal. After hearing Appellant's argument, the trial court denied the motion. Appellant proceeded to present witnesses and evidence. For this reason, Appellant has waived this issue with regard to the denial of his motion for judgment of acquittal at the conclusion of the State's proof.

As stated above, the standard for reviewing a judgment of acquittal is the same as that for sufficiency of the evidence. Below we address Appellant's claims that the evidence was insufficient.

## A. Rape of a Child

Appellant was convicted of rape of a child in Counts one through four. Tennessee Code Annotated section 39-13-522(a) states, "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7).

At trial, the State elected in Count one to rely on the incident where Appellant "penetrated the victim's genitals with his penis the first time she stayed home from school in the sixth grade." The victim testified at trial that she was home from school early in the school year when Appellant took her to her bedroom and put his penis in her vagina. She asked him to stop, he refused. The victim testified her birthday was on November 5, 1996, the first incident happened while her mother was in Houston in the summer of 2009, and school started in the fall of 2009. Appellant claims that the State failed to show the victim's age at the time of the incident and that there was conflicting testimony about why the victim was home from school. We disagree. The proof established that the victim was under the age of thirteen at the time and that Appellant penetrated the victim's vagina with his penis.

In Count two, the State elected to rely on testimony that Appellant "penetrated the victim's anal opening a 'little bit' when he woke her in her bedroom and she had been lying on her stomach." Appellant contends that the proof indicated that the victim described the

body part as her "behind" not her "anal opening", the State failed to establish the victim's age, and the State failed to show penetration. The proof at trial showed the victim testified that Appellant put his penis in her "behind" a "little bit." The victim testified that the first incident of abuse occurred when her mother was in Houston and continued for three months until Appellant was caught. There was testimony from the victim about Appellant's penetrating her behind on one occasion. The evidence was sufficient to show penetration of the victim's anal opening from behind while she was younger than thirteen.

In Count three, the State elected to rely on testimony that Appellant "performed cunnilingus on the victim when he pulled down her pants and 'kissed' her vagina in her bedroom." Appellant insists that the term cunnilingus is improper because the kissing of the victim's vagina does not equate to rape. Cunnilingus is defined as a method of penetration in Tennessee Code Annotated section 39-13-501(7). Further, even the slightest intrusion can satisfy the requirement of penetration and cunnilingus "does not require that the mouth or tongue actually penetrate the vagina." *State v. Terry Vestal*, No. W1999-00287-CCA-R3-CD, 1999 WL 1097819, at *4 (Tenn. Crim. App., at Jackson, Nov. 22, 1999), *perm. app. denied* (Tenn. June 12, 2000). Appellant is not entitled to relief on this issue.

Finally, in Count four, the State elected to rely on the testimony where Appellant "penetrated the victim's genitals with his penis in his bedroom after he called her up to play video games." Appellant again challenges the proof as to Appellant's age. The testimony by the victim at trial was that the one time Appellant penetrated her with his penis in his bedroom was when he called her up to play games on his computer. According to the victim's testimony, this occurred prior to her birthday. Appellant is not entitled to relief on this issue.

### B. Aggravated Sexual Battery

Appellant was convicted of two counts of aggravated sexual battery, which, as relevant to this case, is defined as the "unlawful sexual contact with a victim by the defendant or the defendant by a victim [when] . . . [t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4). "Sexual contact" is "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate areas of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). Additionally, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2).

In Count five, the State elected to rely on the testimony that Appellant "touched the victim's breasts on the skin with his hand in her bedroom while her mother was in Houston."

The victim testified at trial that this was the first time Appellant touched her inappropriately. Appellant was drinking, came into her bedroom, touched her breasts and legs, and tried to lay down with her on the bed. She asked Appellant to leave and he complied. Appellant insists that there is not proof that the conduct was for the purposes of sexual arousal or gratification. To the contrary, the victim's testimony indicated that she thought Appellant was touching her because he wanted to have sex with her. Additionally, Appellant admitted in his confession that he began the sexual abuse of the victim when her mother was in Houston. The jury obviously accredited the testimony of the victim. Appellant is not entitled to relief on this issue.

In Count six, the State elected to rely on the testimony that Appellant "touched the victim's breasts with his hand before engaging in penile vaginal intercourse a few days after the first incident when her mother was in Houston. At trial, the victim testified that a few days after the first incident, she was home alone with her younger sister and Appellant when Appellant took her to her room, undressed her, got on top of her, and put his penis in her vagina. Appellant insists on appeal that the victim's testimony at trial was inconsistent with her earlier statements. A review of the victim's testimony indicates discrepancies in secondary details about this incident. However, these details relate to the location of her family members during the abuse and when Appellant removed his clothing rather than the actual act of abuse. The jury obviously accredited the victim's testimony. Appellant is not entitled to relief on this issue.

## C. Rape

Finally, in Count seven, Appellant was convicted of rape by force or coercion. Rape is the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances . . . [f]orce or coercion is used to accomplish the act." T.C.A. § 39-13-503(a)(1). "Coercion" is defined as the "threat of kidnapping, extortion, force, or violence to be performed immediately or in the future or the use of parental, custodial, or official authority over a child less than fifteen (15) years of age." T.C.A. § 39-13-501(1).

In this count, the State relied on the testimony that Appellant "penetrated the victim's genitals with his penis on the day that her parents found out about the abuse." Appellant's argument with respect to the evidence on this count focuses on the victim's actions, rather than his own admission that he had just finished having sex with the victim and needed to "finish wiping off" when he was caught by the victim's parents. The victim explained that she did not tell anyone about the abuse by her uncle who, in a custodial capacity, lived with the family, because she was afraid that she would get in trouble. The victim specified that she had asked Appellant to stop but he "just kept on doing it, so [she] didn't think [telling

anyone else] would help." The jury clearly believed that Appellant utilized his position as the victim's uncle to inflict the abuse. Appellant is not entitled to relief on this issue.

*Sentencing*

Appellant challenges his sentence as excessive. Specifically, he alleges that the trial court abused its discretion by imposing consecutive sentences. The State disagrees.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 705 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, according to *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." 380 S.W.3d at 709.

A trial court may impose consecutive sentences upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

Appellant herein was convicted of four counts of rape of child, two counts of aggravated sexual battery, and one count of rape. The trial court based the imposition of consecutive sentencing on Tennessee Code Annotated section 40-35-115(b)(5), more than two convictions of offenses involving child sexual abuse. After making it clear that the trial court had considered the evidence at trial and sentencing as well as the presentence report, the principles of sentencing, the nature and characteristics of the criminal conduct involved, the mitigating factors, sentencing practices in Tennessee, and the potential for rehabilitation,

the trial court noted that consecutive sentence was based on factor five under Tennessee Code Annotated section 40-35-115. The record in this case fully supports that conclusion.

*Constitutionality of Tennessee Code Annotated*
*sections 39-13-504, 39-13-522, and 39-13-523*

Prior to sentencing, Appellant filed a motion requesting that the trial court find Tennessee Code Annotated sections 39-13-504, 39-13-522, and 39-13-523 unconstitutional contending these statutes violate the separation of powers clause of the Tennessee Constitution. Specifically, Appellant argued that the statutes violate Article II, section I of the Tennessee Constitution which provides that the "powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial." Appellant contends that the sentencing statutes applicable to his case violate the constitution because of the "removal of the authority to grant probation or parole" because the authority to grant probation is vested in the judicial branch, the authority to grant parole is vested in the executive branch, and the statutes in this case "reassign the powers properly vested in the judicial and executive branches to the legislative branch."

It appears that Appellant is contesting the fact that he was ordered to serve 100% of his sentence in incarceration. Tennessee Code Annotated section 39-13-523(b) requires child rapists to serve the "entire sentence imposed by the court undimished by any sentence reduction credits such person may be eligible for or earn."

Issues of constitutional interpretation are questions of law, which the court reviews de novo without any presumption of correctness given to the legal conclusions of the court below. *State v. Burns*, 205 S.W.3d 412, 414 (Tenn. 2006) (citing *S. Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)). Based on the legislature's enactment of the statutes challenged by Appellant, it is apparent that our general assembly has determined that the seriousness of the offense warrants a more severe punishment and that the authorized punishment is reasonably related to protecting the children of this State. The Tennessee General Assembly has the sole authority to define crimes and determine appropriate punishments. *State v. Brandon Lloyd Russell*, No. M2010-01386-CCA-R3-CD, 2012 WL 927703, at *5 (Tenn. Crim. App., at Nashville, March 15, 2012), *perm. app. denied* (Tenn., Aug. 16, 2012). We determine that the trial court properly declined to declare the statutes punishing child rapists unconstitutional as violative of the separation of powers among the executive, legislative, and judicial branches of government. Appellant is not entitled to relief on this issue.

-16-

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE